**LOWELL STAATS MINING COMPANY, INC., a Colorado corporation, Plaintiff,**

v.

**PHILADELPHIA ELECTRIC COMPANY, Umetco Minerals Corporation, C. David Culver, Pioneer Nuclear, Inc., Pioneer Corporation, and Mesa Operating Limited Partnership, Defendants.**

**Civ. A. No. 87–K–35.**

United States District Court, D. Colorado.

May 18, 1987.

---

Joseph Coleman, Grand Junction, Colo., for plaintiff.

John R. Webb, Mary H. Stuart, Denver, Colo., for Philadelphia Elec. and Umetco Minerals.

Gregory K. Hoskin, Theodore Allegra, David A. Price, Grand Junction, Colo., for Mesa Operating Ltd. P'ship and Culver.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

## BACKGROUND

The history behind this action is described in my earlier opinion and order issued on March 30, 1987. In a predecessor controversy tried in this court, 645 F.Supp. 254 (*Staats I*), Staats brought suit against Pioneer Uravan, Inc. (PUI) for breach of a mining contract. During the course of the trial, third-party defendants Pioneer Corporation (PC) and Pioneer Nuclear, Inc. (PNI) were dismissed from the case. The jury ultimately returned a verdict in favor of Staats. Staats subsequently filed a motion for a new trial on its claims against the third-party defendants. This motion was denied. Staats' appeal from the denial of this motion is pending before the Tenth Circuit.

Staats has been unsuccessful in executing on the full amount of the *Staats I* judgment. Staats accordingly brought this action, seeking to litigate the liability of parties who were, at some point in the past, associated with PUI or the third-party defendants. The case was originally filed in state district court in San Miguel County. On January 28, 1987, I issued a memorandum opinion and order granting defendants' petition for removal. By the same memorandum opinion and order, I dismissed defendants Burton P. Smith and Wallace D. Robison from this action. Final judgment on the order was entered on February 9, 1987. Staats has also appealed that order.

## MOTIONS TO DISMISS

Defendants Mesa Operating Limited Partnership (Mesa) and C. David Culver (Culver) have moved to dismiss the complaint as against them on the grounds of res judicata from *Staats I*. Defendants Philadelphia Electric Company (PEC) and Umetco Minerals Corporation (UMC) have filed a similar motion. Both motions have been fully briefed and are ripe for resolution. Instead of ruling on the two motions separately, I will address the motions as they relate to each of the moving four defendants. I will also, *sua sponte*, address the applicability of the doctrine of res judicata to remaining defendants PNI and PC.

For defendants to prevail on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must appear "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). So long as the plaintiff may offer evidence to support a legally recognized claim for relief, the motion to dismiss should be denied. *Brezinski v. F.W. Woolworth*, 626 F.Supp. 240, 241–2 (D.Colo.1986).

*Defendants Pioneer Corporation and Pioneer Nuclear, Inc.*

Defendants PC and PNI are named in the fourth, fifth, sixth, and seventh claims

for relief. I shall address each claim in turn.

The fourth claim avers fraudulent conveyances of PUI assets to PNI, and further fraudulent conveyances from PNI to PC. In *Staats I*, Staats raised several claims in a third-party complaint against PC and PNI. Staats summarized its positions on these claims as follows:

> As to all claims asserted by Staats against Pioneer Uravan, Staats contends that both Pioneer Corporation and Pionieer Nuclear are jointly and severally liable. Their liability is based upon the fact that Pioneer Uravan is but the instrumentality of these two entities. Furthermore, Staats contends that transfers of millions of dollars of Pioneer Uravan assets to Pioneer Corporation or Pioneer Nuclear were for the intent to hinder, delay, or defraud Staats of its lawful damages; thus enabling Staats to recover its damages from Pioneer Corporation and Pioneer Nuclear. Because the transfers were between parent and subsidiary, agent or instrumentality, the burden of establishing the honesty of all transfers from Pioneer Uravan to its parent or principal; *i.e.*, Pioneer Corporation and Pioneer Nuclear, is on the Pioneer entities.

Staats II Complaint, Exhibit E (Second Amended Pretrial Order in Staats I), at 13.

Following the completion of oral argument on June 2, 1986, I granted defendants' motion for dismissal of the third-party complaint. The motion was granted on the basis of plaintiff's failure to establish a right to disregard the separate corporate structure of the Pioneer entities. Staats II Complaint, Exhibit F (Partial Reporter's Transcript of Motions for Directed Verdict and Ruling in Staats I), at 48. Argument on the motion, however, included the issue of fraudulent conveyances from PUI to PNI or to PC. *Id.* at 38. The issues of corporate identity and fraudulent conveyance were argued together because the conveyance claims were pleaded as an aspect of the corporate instrumentality basis of the third-party complaint. *See* Staats II Complaint, Exhibit E at 13, *supra;* Third-Party Complaint in *Staats I*, ¶ s 4 (general allegations), 3.3, and 3.4. Staats' appeal of the dismissal of the third-party complaint in *Staats I* therefore explicitly includes the fraudulent conveyance claims. Staats II Complaint, Exhibit C (Docketing Statement in Tenth Circuit Case No. 86–2626, the appeal from *Staats I*), at 1.

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (emphasis added). In *Winslow v. Bauer,* 585 F.Supp. 1048, 1053–54 (D.Colo.1984), an action for violations of 42 U.S.C. § 1983, I wrote: "The Winslows not only could have but *should have raised and litigated* the transcript issues in state court. The failure to do so is an absolute barrier to this suit." (Emphasis added.) *See also Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396, 399 (1973) (res judicata "bars relitigation not only of all issues actually decided, but of all issues that *might have been decided*") (emphasis added).

In the fourth claim, Staats repeats its allegations of fraudulent conveyances among the three Pioneer entities. Staats II Complaint, ¶ 4.9. These allegations, however, were rejected in my dismissal of the third-party complaint in *Staats I*. In granting the motion to dismiss the third-party complaint on the basis of the alter ego doctrine, I concluded neither PC nor PNI could be held liable for any debts PUI owed to Staats. Thus, the conveyance to other corporations of assets PC and PNI had acquired from PUI could not work a fraud on Staats. Because the fraudulent conveyance claims were included in the judgment of dismissal of the third-party complaint in *Staats I*, the Staats II fourth claim against PNI and PC is barred. If the third-party complaint was incorrectly dismissed in *Staats I*, then the fraudulent conveyance claims may be resurrected. That decision, however, will be made by the Tenth Circuit Court of Appeals. As my

order of March 30, 1987 noted,[1] Staats must abide the appeal process. PNI and PC are dismissed from the fourth claim.

The fifth claim for relief against PNI is based on the joint responsibility of PNI and PUI to pay any adverse judgment rendered in *Staats I.* This payment obligation is contained in a July 31, 1984 agreement among PUI and defendants PNI, PEC, and UMC. Staats characterizes this agreement as a partnership dissolution or settlement agreement. Staats successfully introduced this agreement into evidence as Exhibit 39 in *Staats I.*[2] In pertinent part, the payment provision states: "If an adverse judgment is entered in the Staats Case [*Staats I*], Pioneer [PUI and PNI, referred to collectively], shall promptly pay any damages awarded (subject to Pioneer's right to appeal the same)...." Exhibit 39, ¶ 5.12.

Staats now contends "that PNI had agreed to pay and was obligated to satisfy the *Staats' [I]* judgment" under this clause. Staats II Complaint, ¶ 6.3. The argument was also advanced during oral argument on the removal hearing of January 23, 1987. For the purposes of deciding this motion to dismiss, I must accept the averment of an obligation to pay as true.

The payment claim could, and should, have been raised in *Staats I.* Staats was obviously aware of the payment claim before *Staats I* was tried, since Staats inserted Exhibit 39 into the *Staats I* record itself. The payment claim could readily have been added to Staats' claims against the third-party defendants. Staats, however, did not seek leave to undertake any such action. Moreover, the payment claim was clearly related in time and origin to the other third-party claims. *Delve v. Three Lakes Water & Sanitation District*, 568 F.Supp. 662, 664 (D.Colo.1983). The payment claim would have formed a convenient trial unit along with those pre-existing third-party claims. *Id.* at 664. Thus, the payment claim is part of the same transaction or series of transactions which gave rise to *Staats I. See id.* This conclusion is supported by plaintiff's use of the same evidence, namely Exhibit 39, in both *Staats I* and Staats II. *Id.* at 664, n. 3. The payment claim is therefore subject to the claim preclusive effect of the doctrine of res judicata. Accordingly, PNI is dismissed from the fifth claim for relief in Staats II.

PC's liability under the fifth claim is based on the allegation that PC acquired all of PNI's assets and liabilities. Staats II Complaint, ¶ 5.7. Under *Conley v. Gibson,* I must assume the validity of this allegation. Application of the *Conley* principle, however, cannot salvage the fifth claim as against PC. PC's role is clearly derivative. It is predicated on PNI's payment obligation. Since adjudication of PNI's obligation is barred, resolution of PC's vicarious responsibility under the same obligation is also barred. PC is dismissed from the fifth claim.

Relying on the parenthetical language quoted above from ¶ 5.12 of Exhibit 39, Staats contends it could not have asserted the payment claim until after the time to appeal the *Staats I* judgment had run.[3] I disagree. Contrary to Staats' argument, Staats' Response to Culver and Mesa Motion to Dismiss at 6–7, the parenthetical language does not condition fulfillment of the payment obligation on any antecedent PNI action of failing to notice an appeal from *Staats I.* Rather, the parenthetical language serves the same purpose as a subrogation clause in an insurance contract. By undertaking to pay the Staats I judgment, PNI also became subrogated to the right to appeal that judgment. The parenthetical language simply preserved this subrogated right. The right of subrogation was ancillary to the duty of payment.

---

1. *See* page 2 of the March 30 order, discussing plaintiff's motion for reconsideration.

2. Plaintiff introduced this same exhibit into evidence in this case, No. 87–K–35, at the removal hearing convened on January 23, 1987.

3. The time to appeal did not run until November 1986. Staats' Response to Mesa and Culver Motion to Dismiss, at 6.

This conclusion is supported by the observation that the drafters of Exhibit 39 placed the contested language in parentheses. Exhibit 39 is a lengthy and complete document settling the commercial rights of several corporations. Had the drafters meant to imbue the parenthetical clause with the extreme implications Staats now draws, they would undoubtedly have made their intentions apparent. I therefore do not find any express "subject to" condition which defuses the effect of res judicata principles. *See* Staats' Response to Culver and Mesa Motion to Dismiss, at 6–7.

■ The sixth claim contends PNI and PC were liquidated without regard to the adequacy of the obligation to satisfy the *Staats I* judgment. Staats II Complaint, ¶ s 6.2, 6.3. The sixth claim also realleges, and therefore incorporates, the allegations raised in the fifth claim. *Id.,* ¶ 6.1. The sixth claim is specifically predicated on the payment claim of Exhibit 39. For the reasons expressed with relation to the fifth claim, PNI and PC must be dismissed as defendants from the sixth claim.

■ The situation is similar for the seventh claim. That claim asserts that PNI, as a partner of PUI, is liable for PUI's debts. The seventh claim further avers PC is liable because it acquired PNI assets. *Id.,* ¶ s 7.2, 7.3, 7.4. The source of the original partnership liability is Exhibit 39. Any claim of PNI liability arising out of the purported partnership relationship embodied in Exhibit 39 should have been litigated in Staats I and is precluded by res judicata.[4] PNI is therefore dismissed from the seventh claim. Again, since PC's liability is contingent on PNI's liability, PC is also dismissed from the seventh claim.

Since this action was originally brought in state court, plaintiff has invoked Colo.R.

Civ.P. 106(a)(5) [5] as a basis of liability in the seventh claim.[6] That rule states:

(a) .... In the following cases relief may be obtained in the district court by appropriate action under the practice prescribed in these rules:

(5) When judgment is recovered against one or more of several persons jointly indebted upon an obligation, and it is desired to proceed against the persons not originally served with the summons who did not appear in the action. [sic] Such persons may be cited to show cause why they should not be bound by the judgment in the same manner as though they had been originally served with the summons, and in his answer any such person may set up any defense either to the original obligation or which may have arisen subsequent to judgment [sic], except a discharge from the original liability by the statute of limitations.

Should Rule 106(a)(5) be applicable to this action, then it may be utilized in federal district court. Fed.R.Civ.P. 69. Unfortunately for plaintiffs, however, Rule 106(a)(5) is not germane. The rule was originally enacted to alleviate the harshness of the common law principle that "in an action at law against several defendants *jointly liable only,* all must be served with process before judgment could be rendered." *Ellsberry v. Block,* 28 Colo. 477, 65 P. 629 (1901) (emphasis added). Operation of this rule in an action *on the debt of a partnership* resulted in the insulation of those individual partners who had not been served from the effect of the judgment. This rule stood at odds with the developing substantive law of partnership, where each individual partner could be held liable for the debts of the partnership entity. Rule 106(a)(5) rectified this situation by providing "a method of procedure whereby a partnership might be sued upon its obli-

**4.** In addition, the seventh claim, like the sixth, also specifically realleges the contents of the fifth and sixth claims. *Id.,* ¶ 7.1. The seventh claim is, therefore, also based on the payment obligation. It is independently barred to that extent.

**5.** The Staats II complaint makes repeated references to "C.R.C.P. 106(5)." *See, e.g.,* ¶ s 7.2, 7.3,

7.4. No such provision exists. I assume plaintiff is referring to Colo.R.Civ.P. 106(a)(5).

**6.** Rule 106(a)(5) is also mentioned in several other claims in the Staats II complaint. My analysis of this rule for claim seven applies equally to all other claims in which the rule is cited as authority.

gations, its members brought into court, judgment rendered which would bind the firm and individuals served, *and that those not served with summons might be subsequently brought in, and a judgment entered which would be personally binding upon them." Ellsberry,* 65 P. at 629 (emphasis added).

The rule is not directed to the situation posed here. The *Staats I* judgment was not recovered against one or more of several persons jointly indebted upon an obligation. PC and PNI were dismissed from the case, so Staats obtained a judgment against PUI only. Nothing in the *Staats I* complaint or the *Staats I* third-party complaint raised the specter that Staats was suing on a partnership debt or any other joint obligation involving third parties other than PC and PNI. Staats now raises that possibility for the first time in Staats II. As described elsewhere in this opinion, the attempt is barred by res judicata. Had Staats raised the point in *Staats I,* then Rule 106(a)(5) might be available. Staats' failure to do so, however, renders use of the rule inappropriate to this case.[7]

### Defendant C. David Culver

Defendant C. David Culver is named in claims four and six of the Staats II complaint. In the fourth claim, Staats accuses Culver of acting in concert with former defendants Smith and Robison in facilitating fraudulent conveyances designed to frustrate the execution of judgment by Staats.

The sixth claim for relief avers that Culver, as an officer or director of PC, liquidated PC without providing for the payment, or sufficiency of assets for payment, of creditors such as Staats. Culver is listed as both an officer and director of PC in that corporation's 1984 annual report.

As was the situation with respect to Smith and Robison, the personal liability of Culver is an issue which could and should have been raised in *Staats I.* Certain arguments regarding Smith and Robison have already been presented in the memorandum opinion and order issued on January 28, 1987. Those arguments are just as compelling with respect to Culver. I incorporate them here. *Lowell Staats Mining Co. v. Philadelphia Electric Co., et al.,* 651 F.Supp. 1364, 1367–8 (D.Colo.1987).

Staats contends I must distinguish between fraudulent acts Culver committed before the date of the Staats I judgment and fraudulent acts committed after that date. This position is supported by the principle that res judicata cannot apply to actions which transpire after adjudication of a claim. Staats' Response to Culver and Mesa Motion to Dismiss, at 7.

I have no quarrel with this principle in the abstract. Yet, it has no impact on my decision because it is inapplicable here. As previously denoted, PC and PNI were dismissed from *Staats I* because plaintiff failed to sustain its burden on the alter ego doctrine. I concluded neither PC nor PNI could be held liable for any debts PUI owed to Staats. Due to the interrelationship between the alter ego basis of the third-party complaint and the conveyance claim contained within that complaint, the conveyance to other corporations of assets PC and PNI had acquired from PUI could not work a fraud on Staats. It follows that consideration of the time period in which PC or PNI transferred assets previously obtained from PUI is irrelevant to the liability of either PC or PNI for the *Staats I* judgment. The concept of privity dictates that this conclusion holds equal weight for agents of PC such as Culver.[8] Culver is dismissed from this action.

---

**7.** This point is supported by the fact that, with one exception, no published decision since the adoption of modern rules of civil procedure discusses the use of Rule 106(a)(5). The exception is *Womack v. Grandbush,* 134 Colo. 1, 298 P.2d 735 (1956). That case is distinguishable because there, the existence of the partnership was concealed from the plaintiff. Plaintiff's use of Exhibit 39 in *Staats I* demonstrates that plaintiff knew or should have known, during *Staats I,*

of the existence of the partnership claims now asserted in Staats II. Further, even if Staats was justifiably unaware of the partnership claims, the filing of an entirely new action is not a proper procedural use of Rule 106(a)(5).

**8.** I did not expressly address this point with regard to Robison and Smith in either of my orders of January 28, 1987 or March 30, 1987. The argument is just as effective for those two

*Defendant Mesa Operating Limited Partnership*

■ Mesa is named in claims four, five, six, and seven of the Staats II complaint. Claim four alleges a fraudulent transfer of PUI assets to PNI, from PNI to PC, and finally from PC to Mesa. Mesa' liability under this claim is therefore contingent on the liability of PNI and PC. As explained above, the claims for fraudulent conveyance of assets from PUI to PNI and PC are barred. Since Mesa's involvement in the alleged chain of wrongdoing is derivative, the fourth claim against Mesa must also be dismissed.

Mesa's liability under the fifth, six, and seventh claims of the complaint also rest on PC's liability. Since I have determined PC cannot be held accountable under any of those claims, Mesa is also exonerated.

*Defendant Philadelphia Electric Company*

PEC is named in claims one, two, three, and four. The first claim alleges the existence of a joint venture or partnership between PUI and PEC beginning in 1978 and ending in the dissolution agreement of 1984 (Exhibit 39). Through PUI, PEC "incurred obligations in favor of Staats pursuant to a September 15, 1978 contract with Staats." Complaint, ¶ 1.5. This contract was the subject of *Staats I*. The first claim further states that PUI and PEC are jointly and severally liable to Staats for all sums due under that mining contract. "This obligation has been reduced to a final judgment in litigation captioned Lowell Staats Mining Company, Inc. v. Pioneer Uravan, Inc., et al., Case No. 82 K 2039, United States District Court for the District of Colorado." Complaint, ¶ 1.6.

■ By its own admission, Staats was fully aware of the alleged partnership relationship between PEC and PUI some time in 1985. Staats' Response to PEC and UMC Motion to Dismiss, at 4. Staats I did not go to trial until June 1986. Thus, Staats had an adequate opportunity to raise any claims it might have had against the alleged partnership at that time.[9] Its failure to do so poses a bar to this claim. *See May v. Parker-Abbott Transfer and Storage, Inc.*, 663 F.Supp. 22 (D.Colo. 1987).

Plaintiff resists this result:

Staats I had been pending since 1982 and the partnership settlement, i.e., dissolution agreement was executed in August 1984 and produced to Staats only after the filing of a Third Party Complaint against Pioneer Nuclear in 1985. Learning of this information in 1985, Staats was not required to bring PEC into the action and incur the almost certain detriment of having PEC demand trial preparation time somewhat commensurate with the three years of discovery which had already occurred between the existing parties. Staats might never have gone to trial under PE's view of the law. Plaintiff's April 2, 1987 Brief at 4–5.

Staats was not *required* by any order or rule of court to bring PEC into this action. At the least, however, Staats should have made a record in *Staats I* of PEC's acclaimed liability for PUI's debt to Staats. For example, Staats could have, but did not, seek leave to amend its third-party complaint to add PEC as a defendant. Even if Staats had been truly concerned about the potential delay further discovery could entail, such action would at least have protected its interests. By failing to act when its position and state of knowledge required it do so, Staats acquiesced in the merger of the PEC partnership claim into the Staats I judgment.

■ In any event, Staats' purported concern with delays in the trial process is specious. The argument is an ex post facto attempt to justify Staats' failure to act

---

agents of Pioneer entities, however, as it is for Culver.

**9.** Staats contends PEC is a "different party" from the parties in Staats I, so that res judicata cannot apply. Staats' Response to PEC and UMC Motion to Dismiss, at 9. This argument is, paradoxically, betrayed by the basis of liability Staats asserts in Staats II. Staats II seeks to hold PEC liable, as PUI's *partner,* for the *partnership* debts owed to Staats. Under this configuration of relationships, PEC is in privity with PUI and res judicata does apply.

timely to protect its interests. It is the duty of the trial judge to determine how much discovery preparation is needed once a third-party defendant has been added. The trial judge also decides whether a continuance would be justified under such circumstances; and if so, for how long. If Staats' argument were accepted, a litigant could tacitly put aside its adversarial garb, don judicial robes, choose to ignore substantive considerations of joinder of claims, and then reassume its identity as an advocate to cry foul once the adverse consequences of that omission came to light.

Staats' argument is additionally undermined by its lack of foundation in fact. The record reflects that Staats brought its third-party complaint against PNI and PC in August of 1985. This third-party complaint was filed more than thirty-two months after the filing of the original complaint in *Staats I*, but only ten months before trial. Staats' argument concerning addition of PEC is belied by its own actions with respect to PNI and PC. PEC is dismissed from the first claim. Since PEC is the sole defendant named in that claim, the first claim in the Staats II complaint is dismissed.

■ PEC is also the sole defendant in the second claim. That claim seeks to hold PEC liable as a transferee in violation of Colo.Rev.Stat. § 4–6–101, *et seq.* Here, however, Staats seeks to impose liability not on the basis of a partnership relationship, but rather on the basis of arms-length commercial dealing. Colo.Rev.Stat. § 4–6–111 contains a six month statute of limitations. The transfers were effected in the July 1984 settlement agreement embodied in Exhibit 39. *See* Staats' Response to PEC and UMC Motion to Dismiss, at 5, 6, 8. Claims filed in January 1987 are therefore barred by the statute. The second claim is dismissed.

The third claim, again solely against PEC, reverts once more to the partnership theory. This claim is indistinguishable from the first claim, except that it involves the transfer of certain property rather than PUI's particular obligations to Staats under the September 15, 1978 mining contract

which was the subject of Staats I. For the reasons explained with respect to the first claim, this claim is also dismissed.

■ PEC's role in the fourth claim is as a recipient of fraudulent conveyances, from PUI, of the property listed in the third claim. Staats II Complaint, ¶ 4.2. No partnership relationship is alleged, but the claim grows out of Exhibit 39. Staats' Response to PEC and UMC Motion to Dismiss, at 6. "A judgment 'precludes a claim not only as to issues actually resolved, but also as to all matters germane to the general issue which could or might have been litigated therein.'" *Prospero Associates v. Burroughs Corporation,* 714 F.2d 1022, 1027 (10th Cir.1983), quoting from *Ballas v. Cladis,* 167 Colo. 248, 447 P.2d 224, 228 (1968), *cert. denied,* 395 U.S. 921, 89 S.Ct. 1772, 23 L.Ed.2d 238 (1969); *see Lowell Staats,* 651 F.Supp. at 1367. The question of PEC's liability as a result of Exhibit 39 is, as the use of that exhibit in Staats I demonstrates, a matter which was germane to the general issue in that case. This matter could or might have been litigated in Staats I. It is now barred. PEC is also dismissed from the fourth claim.

*Defendant Umetco Minerals Corporation*

UMC appears in the fourth and eighth claims. UMC's alleged liability also stems from its participation in the agreement of Exhibit 39. For the reason just described in dismissing PEC from the fourth claim, UMC is also dismissed from this claim.

The eighth claim asserts UMC was a partner with PUI, PNI, and PEC. This claim is analogous to the accusations made against PEC in claims one and three. UMC is dismissed from this claim.

Accordingly, IT IS ORDERED that the motion to dismiss filed by defendants Culver and Mesa is granted. IT IS FURTHER ORDERED that the motion to dismiss filed by defendants Philadelphia Electric and Umetco is also granted. IT IS FURTHER ORDERED that defendants Pioneer Corporation and Pioneer Nuclear are dismissed. The clerk shall enter judgment dismissing

this action. Each party shall bear its own costs and fees.